STEPHANIE HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

EDWARD CHANG (CABN 265181)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6938
    FAX: (415) 436-7234
    Edward.Chang3@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:22-cr-00403-CRB |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN** |
| v. | |
| CRISTIAN DIAZ-VILLATORO, | |
| Defendants. | |

## INTRODUCTION

Cristian Diaz-Villatoro ("DIAZ") (DOB October 30, 1992) is a 30 year old Honduran national who self-professes to transport narcotics for hire, including to San Francisco. DIAZ's entire state criminal history occurred in San Francisco and includes various drug related arrests and convictions. In 2010, DIAZ was arrested for selling narcotics on two occasions that resulted in a December 2010 felony conviction for transporting/selling narcotics for which DIAZ received 41 days in custody and probation. As a result, removal proceedings were initiated. In 2011, DIAZ was arrested for Selling Narcotics, for which he again received a felony conviction for that same charge and suffered 39 days in custody and

probation.  In October 2021, DIAZ was arrested on a number of narcotics sales and sales related charges, including conspiracy to commit a crime, for which he was sent by the San Francisco criminal court to a potential diversion program, "Community Justice Center".  DIAZ failed to appear at his most recent state court date due to his incarceration for the incidents comprising this potential prosecution.

DIAZ's federal criminal history is entirely removal-based in nature: 2008 arrest for being an inadmissible alien; 2010 removal from the United States for re-entering after having previously been removed; 2011 arrest for re-entering after having previously been removed; 2012 conviction for illegal entry for which DIAZ was sentenced to 180 months; 2017 arrest and removal for being an alien previously removed; 2018 conviction for having re-entered as a removed alien; 2018 arrest for illegal entry.

DIAZ was similarly convicted in Utah for possessing dangerous drugs in 2010.  In 2017 in Georgia, DIAZ was convicted of battery, originating from charges that included cruelty to children, obstructing a person making an emergency phone call.

After his most recent arrest on September 6, 2022, a federal grand jury returned an indictment charging DIAZ with four counts of distribution and/or possession with intent to distribute fentanyl and methamphetamine.  The amount of drugs in DIAZ's possession upon his arrest is staggering:  2.37 pounds of fentanyl, and 139.1 grams of methamphetamine.  The charges also reflect methamphetamine sold to an undercover law enforcement officer on two separate dates in Marin County in the amounts of 58.6 grams and 115 grams.

## FACTUAL BACKGROUND

1. <u>July 28, 2022 Controlled Purchase</u>

On July 28, 2022, Marin Sheriff's investigators texted "Juan" at the number ending 9652 through the phone app "Callyo" to ask if "Juan" sold meth, and the response was "yes."  Later that day, investigators called "Juan" and arranged to purchase 2 oz of methamphetamine from him that evening at a Target in San Rafael.

That evening, Sheriff investigators and "Juan" texted and communicated by phone their time and location status, and then "Juan" arrived in a silver Hyundai 4-door car with tinted windows, license plate 8XZF738.  Investigators saw him clearly – 6'0", 180 lbs, blonde and brown hair, wearing a hooded sweatshirt.  "Juan" was later identified as the defendant, DIAZ.

DIAZ sold the investigators two bags of suspected methamphetamine weighing approximately 2 oz for $300 in pre-recorded funds.

2. <u>July 29, 2022 Controlled Purchase</u>

The next day, Sheriff's investigators texted DIAZ for two more ounces of methamphetamine. DIAZ agreed to the sale, citing a $300 price. They again planned to meet at the Target in San Rafael.

DIAZ and investigators were in contact regarding DIAZ's arrival time. DIAZ arrived, parked his Hyundai, approached the investigator's car, and the sale occurred. The weight of each bag was approximately 28.7 grams each and weighed 58.6 grams total in the original packaging. Methamphetamine was confirmed through TruNarc.

3. <u>August 5, 2022 Controlled Purchase</u>

About a week later, Sheriff's investigators texted DIAZ to purchase about four ounces of methamphetamine. DIAZ agreed at a price of $600. DIAZ again chose the same Target store parking lot.

After corresponding with DIAZ regarding his estimated time of arrival, DIAZ drove onto the scene, parked his car, and approached the investigator's car where the sale took place.

The undercover investigator confirmed DIAZ was the same individual who sold him methamphetamine on prior occasions.

The suspected methamphetamine was divided into four bags, weighing between 28.6 and 28.8 grams each, and totaling 115.8 grams of methamphetamine when weighed in the original packaging. Methamphetamine was confirmed through TruNarc.

4. <u>September 6, 2022 Arrest and Searches</u>

On September 6, 2022, Sheriff's investigators texted DIAZ to purchase 5 ounces of methamphetamine at the Target parking lot. At 820 pm, DIAZ drove into the parking lot. Investigators in an undercover vehicle boxed DIAZ's vehicle in and contacted DIAZ.

    a. <u>Search of Person</u>

DIAZ was detained and a search of his person yielded two cell phones and $120 cash.

    b. <u>Vehicle Search</u>

A search of the vehicle, assisted by a K9 unit, proved more fruitful.  Indicia of sales and suspected narcotics were found in the middle console and in a backpack in the trunk.

          i.   <u>Middle Console</u>

The middle console yielded one baggie containing multiple tied off baggiest of white crystalline substance, which amounted to approximately five ounces of suspected methamphetamine and 2.37 pounds of suspected fentanyl in packaging.

          ii. <u>Trunk Backpack</u>

A brown backpack was found in the trunk and contained:

- 44 g of suspected cocaine in packaging.
- 143 g of suspected methamphetamine
- 173 g of suspected heroin
- 30 suspected Xanax pills
- 200 "M30" oxycodone pills
- One functional digital scale.

<u>Labs for Backpack Methamphetamine:</u> The Drug Enforcement Administration returned laboratory results on the methamphetamine recovered on September 6, 2022, from DIAZ's backpack, found in the car he was driving.  The Net Weight is approximately 139.1g, with a substance purity of approximately 99%, and an amount of pure substance at approximately 137.7 grams.

<u>Labs for Fentanyl:</u>  The Drug Enforcement Administration returned laboratory results on the fentanyl recovered on September 6, 2022, from DIAZ's backpack, found in the car he was driving.  The fentanyl was in 22 individual packaging, with net weight totaling approximately 1,074.692 grams, or 2.37 lbs.

## **ARGUMENT**

### I.    LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  Detention is appropriate where defendant is either a flight risk or a danger to the community; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). While a finding that a defendant is a danger to the community must be supported by clear and convincing evidence, 18 U.S.C. § 3142(f), a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

In determining whether pretrial detention is appropriate, the court must consider information regarding the nature and circumstances of the charged offense; the weight of the evidence; the danger posed by the defendant to any person or the community; and the history and characteristics of the defendant. 18 U.S.C. § 3142(g).

## II. MR. DIAZ-VILLATORO IS A DANGER TO THE COMMUNITY AND A FLIGHT RISK

DIAZ is charged with four counts of distribution and/or possession with intent to distribute fentanyl and methamphetamine. Two of those counts carry a statutory maximum of more than ten years' imprisonment. As such, DIAZ is subject to a rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3)(A). In order to overcome this presumption, DIAZ bears the burden to prove that he is not a flight risk *and* that his release will not endanger the community. He cannot do so here.

### A. Diaz-Villatoro Cannot Rebut the Presumption That He Poses a Danger to the Community

The record demonstrates that DIAZ poses a significant danger to the community. As set forth above, he possessed a large amount of substances packaged in such a way that establishes that he made a career of narcotics trafficking and has most recently chosen to possess for sale significant quantities of fentanyl—a drug that has wreaked havoc on San Francisco residents.

DIAZ's prior drug related arrests and convictions further establish a pattern of similar criminal activity, and his conviction in Georgia speaks to violent tendencies.

### B. Mr. Diaz-Villatoro Cannot Rebut the Presumption That He Poses a Flight Risk

Pretrial detention is also warranted because of DIAZ's risk of flight. DIAZ is unlawfully in the United States and will be subject to a removal order issued by immigration authorities, as he had been in the past. His Utah drug convictions suggests that he has ties in the United States outside of this direct District. DIAZ, having been removed to Honduras numerous times in the past, presumably has contacts in Honduras, his country of origin.

The indictment returned by the grand jury in this case charges DIAZ with numerous crimes that carry significant penalties, including a potential 10-year mandatory minimum prison sentence. This presents DIAZ with a compelling reason to violate court-ordered conditions of release and flee the District

to avoid accountability. The record demonstrates that he has both the motive and the means to do so if he were released.

## CONCLUSION

There are no set of conditions that will reasonably assure the appearance of the defendant at court proceedings or ensure the safety of the community. The Court should order the defendant detained pending trial.

DATED:  November 2, 2022                                  Respectfully submitted,


                                                          STEPHANIE M. HINDS
                                                          United States Attorney



                                                          ___/s/ Edward Chang_
                                                          EDWARD CHANG
                                                          Special Assistant United States Attorney